DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FREDERIC MONNOT,**
Appellant,

v.

**U.S. BANK, NATIONAL ASSOCIATION AS TRUSTEE RELATING TO CHEVY CHASE FUNDING LLC MORTGAGE BACKED CERTIFICATES SERIES 2007-2** and **JENNIFER W. MONNOT,**
Appellees.

No. 4D14-2527

[February 24, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lynn Rosenthal, Judge; L.T. Case No. CACE09064635(11).

Arthur Morburger, Miami, for appellant.

Susan B. Morrison and Lauren E. Wages of Law Office of Daniel C. Consuegra, P.L., Tampa, for appellee, U.S. Bank.

MAY, J.

A borrower appeals a final judgment of foreclosure. He argues the court erred in entering the judgment because U.S. Bank, N.A., as Trustee relating to Chevy Chase Funding, LLC, Mortgage Backed Certificates Series 2007-2 ("bank") failed to prove standing, and also erred in dismissing his counterclaim alleging a Truth in Lending Act ("TILA")[1] violation. We agree and reverse.

The borrower and Chevy Chase Bank, F.S.B. ("Chevy Chase Bank") executed a note and mortgage. The note provided that the annual interest rate of 8.750% may vary, but could not exceed 19.900%. The initial monthly payment under the note was $5,423.13, which would be the same for the first sixty monthly payments. MERS was named the nominee for Chevy Chase Bank.

---

[1] Truth in Lending Act, 15 U.S.C. § 1601 et seq. (2014).

The same day, the borrower signed and acknowledged receiving the TILA Statement from Chevy Chase Bank. The TILA Statement noted that the annual percentage rate ("APR"), which was subject to change, was 8.759%. It also noted 38 payments of $5,423.13 beginning on May 1, 2007, and 322 payments of $12,980.97 beginning on July 1, 2010. The loan was a monthly adjustable rate mortgage loan that had a variable rate.

On August 1, 2009, the borrower failed to make his monthly payment. On December 2, 2009, U.S. Bank, NA as Trustee for CCB Libor Series 2007-2 Trust ("U.S. Bank as Trustee for CCB") filed a complaint against the borrower. Count I sought foreclosure of the mortgage and count II sought to reestablish a lost note. U.S. Bank as Trustee for CCB alleged that it held the mortgage by virtue of an assignment. It also alleged that it "owns and holds the note and subject mortgage." And, it alleged that "[t]he Plaintiff, its Assignor, or its servicer, was in possession of the Note and was entitled to enforce the Note when loss of possession occurred."

A copy of the note and mortgage were attached to the complaint. The attached note was executed in favor of Chevy Chase Bank and did not contain any endorsements. On December 11, 2009, U.S. Bank as Trustee for CCB filed a notice of filing original note and mortgage.

On July 22, 2010, the borrower filed an amended answer and asserted several affirmative defenses and a counterclaim. The borrower asserted affirmative defenses of lack of compliance with TILA and Regulation Z of the Code of Federal Regulations[2] and lack of standing. He alleged untruthful disclosures on his finance charges and APR.

In the borrower's counterclaim, he alleged that the TILA Statement failed to comply with TILA disclosure requirements because the finance charges, monthly payments, and APR were significantly understated, as demonstrated by an attached forensic audit report. He alleged that the errors were apparent on the face of the TILA Statement and could be proven inaccurate by a comparison to the note. The borrower sought offset and recoupment damages from U.S. Bank as Trustee for CCB for fraud in the inducement and TILA violations, among other counts. The borrower also requested statutory damages of not less than $200 nor more than $2,000 and actual damages.

The borrower attached a letter explaining a report from his expert witness. The report concluded that Chevy Chase Bank committed multiple TILA violations in its TILA Statement. U.S. Bank as Trustee for CCB

---

[2] 12 C.F.R. § 226 (2014).

answered the counterclaim and denied the TILA violation allegations.

On June 23, 2010, U.S. Bank as Trustee for CCB filed a corrective assignment of mortgage. It stated that "prior to November 20, 2009, . . . assignor has granted, bargained, sold, assigned . . . the [subject] mortgage," together with the note, to the bank. However, the vice president of MERS executed it on May 11, 2010.

On July 6, 2010, U.S. Bank as Trustee for CCB moved to reform the assignment of mortgage and correct scrivener's errors in the complaint, lis pendens, and assignment of mortgage. It argued that (1) an assignment of mortgage was created on December 1, 2009; (2) a complaint was filed in this case on December 2, 2009; (3) the plaintiff's name was erroneous and should have named the bank; (4) U.S. Bank as Trustee for CCB did not exist; (5) the assignment of mortgage was incorrect; and (6) the intent of the parties was to assign the mortgage to the bank because it is the owner and holder of the note and mortgage. The court granted the motion, reformed the assignment of mortgage, and corrected the scrivener's errors to name the bank.

On April 29, 2014, the bank filed a declaration from a records custodian for Capital One, N.A., as successor by merger to Chevy Chase Bank, N.A., formerly known as Chevy Chase Bank, FSB ("Capital One"). Attached were the payment history, collection notes, and demand letters. It also filed a second records custodian declaration from a bank records custodian, who verified that the attached limited powers of attorney; June 1, 2007 PSA relating to Chevy Chase Funding, LLC Mortgage Backed Certificates, Series 2007-2; and mortgage loan schedule were within its business records.

The case proceeded to a two-day non-jury trial before a magistrate. The bank requested the court take judicial notice of the merger between Chevy Chase Bank and Capital One, the original mortgage, and the corrected assignment of mortgage. The magistrate took notice. It then offered the two declarations filed by the bank and their attached records into evidence, which the magistrate admitted.

The bank then offered a declaration from its attorney's law firm's records custodian into evidence, which was admitted. The declaration and attachments concerned the note and mortgage. The attachment was a screenshot from the firm's case management system, which contained one non-blacked-out line. The line noted that the firm received the original note and mortgage on December 6, 2009.

3

The magistrate also admitted, among other documents, the original note and mortgage. Unlike the copy of the note attached to the complaint, the original note contained an undated special endorsement from Chevy Chase Bank to U.S. Bank, N.A. as Trustee.

The bank offered the testimony of a high risk analyst for Specialized Loan Servicing ("SLS"), which began servicing the loan in March 2010. The analyst testified that "the original note and other documents related to origination" are typically found within a collateral file. SLS received the collateral file from the bank on November 27, 2009, before the suit was filed. However, the analyst had no personal knowledge whether the endorsed note was part of that file, even though it usually was.

The analyst also testified that the note was part of the merger between Chevy Chase Bank and Capital One, which she knew from a review of the PSA. And, based on her records review, the bank obtained physical possession of the note in June 2007. While she later testified that the bank had the original endorsed note in its possession at the time the complaint was filed, she admitted that she did not know the specific date on which the note was endorsed to the bank. And, she did not check the collateral file for the original note and had no personal knowledge of whether the original note was in the collateral file when received by the servicer.

The magistrate heard the borrower's counterclaim for the alleged TILA violations. The bank's counsel argued the statute of limitations had run and only a defense of recoupment or setoff was allowed. The borrower's counsel argued the borrower was allowed to bring the counterclaim. The magistrate allowed the counterclaim to proceed.

The borrower's expert testified that she conducted a forensic audit of the loan using a software program. She opined that the TILA Statement did not match the components of the note, and the payment terms in the TILA Statement were inaccurate. She further opined that the finance charges were understated by $4.9 million because the 8.75% interest rate was disclosed rather than the 19.9% interest rate, which was the interest rate cap according to the note. And, she opined the borrower was entitled to damages of $292,848, which represented double the finance charges the borrower paid from the note's inception to the default date.

The bank moved to dismiss the TILA counterclaim under 15 U.S.C. § 1640, because the expert could determine if the TILA Statement was inaccurate only based upon a software program and not by looking at the face of the document. The borrower's counsel argued the motion to

dismiss was improperly made and the face of the TILA Statement showed violations. The magistrate reserved ruling.

The borrower testified that he relied on the truth and accuracy of the TILA Statement. When he discovered the inaccuracy in 2009, he stopped making payments to "cut his damages." The bank moved again to involuntarily dismiss the counterclaim. The magistrate recommended granting involuntary dismissal on the counterclaim's fraud in the inducement count and denying it on the TILA violation count. The borrower voluntarily dismissed the other counts.

The magistrate found the bank proved its foreclosure case. It then found in favor of the bank with respect to the counterclaim. The magistrate recommended that final judgment of foreclosure be granted in favor of the bank, a final judgment be granted in favor of the bank on the TILA violation counterclaim, and the fraud in the inducement counterclaim be involuntarily dismissed. The trial court accepted the magistrate's recommendations, granted involuntary dismissal as to the fraud in the inducement count, and found in favor of the bank on the TILA violation. It then granted final judgment of foreclosure in favor of the bank. From these judgments, the borrower now appeals.

The borrower argues the bank was not the original lender, did not possess the note at the case's inception, and had an assignment of mortgage and note under a fake name. There was no testimony regarding when the note was endorsed.

The bank responds that it proved standing through its documentary and testimonial evidence that it owned and held the note at the case's inception. Its rights as a holder were not affected by the scrivener's error in the assignment of mortgage, which was later corrected.

The borrower replies that the assignment of mortgage does not establish standing because it was dated after the bank filed its complaint. If, as the answer brief alleges, Capitol One was the servicer and holder of the original note at the time suit was filed, then the bank was not the proper plaintiff.

We have de novo review. *Dixon v. Express Equity Lending Grp., LLLP*, 125 So. 3d 965, 967 (Fla. 4th DCA 2013) (citation omitted).

"[S]tanding may be established from the plaintiff's status as the note holder, regardless of any recorded assignments." *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012) (citation

5

omitted). "If the note does not name the plaintiff as the payee, the note must bear a special endorsement in favor of the plaintiff or a blank endorsement." *Id.* "[W]here there is an indication that equitable transfer of the mortgage occurred prior to the assignment, dismissal of the complaint is error, even if the assignment was executed after the complaint was filed." *Id.* at 174.

"A *plaintiff alleging standing as a holder* must prove it is a holder of the note and mortgage both as of the time of trial and also that [it] had standing as of the time the foreclosure complaint was filed." *Kiefert v. Nationstar Mortg., LLC*, 153 So. 3d 351, 352 (Fla. 1st DCA 2014) (emphasis added). "A plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed and cannot be established retroactively by acquiring standing to file a lawsuit after the fact." *LaFrance v. U.S. Bank Nat'l Ass'n*, 141 So. 3d 754, 756 (Fla. 4th DCA 2014) (citation omitted) (internal quotation marks omitted).

Here, the bank alleged that it "owns and holds the note and subject mortgage." Thus, under *Kiefert* it had to establish it possessed either a blank endorsed or specially endorsed note in its favor at the case's inception. When the bank filed its complaint, it attached a copy of the note, which was in favor of the original lender, Chevy Chase Bank, and contained no endorsements. The bank did not file the original note with the undated special endorsement from Chevy Chase Bank to U.S. Bank, N.A. as Trustee until after the complaint was filed. This alone is insufficient to establish standing at the case's inception. *Tilus v. AS Michai LLC*, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015) (citing *Bristol v. Wells Fargo Bank, Nat'l Ass'n*, 137 So. 3d 1130, 1132 (Fla. 4th DCA 2014)).

The bank also argues the custodian's declaration and attached screenshot showing that the bank's counsel received the original note on December 6, 2009, shows the bank or servicer was in possession of the note on or before December 5, 2009. However, possession on December 5, 2009 does not prove possession at the case's inception, December 2, 2009. And, it does not prove when the original note was specially endorsed in the bank's favor. *See Russell v. Aurora Loan Servs., LLC*, 163 So. 3d 639, 642–43 (Fla. 2d DCA 2015).

The bank next relies on its witness's testimony to prove standing, but this also fails. The testimony revealed that the original note is usually found within the collateral file and the servicer received the collateral file from the bank on November 27, 2009. The bank's witness testified that the bank had possession of the original endorsed note when it filed the

complaint, based on her review of the business records. However, the witness had no personal knowledge of whether the specially endorsed original note was part of the collateral file because she did not review its contents. She also did not know why the endorsed note was not attached to the complaint nor the specific date the note was endorsed to the bank. *See Kenney v. HSBC Bank USA, Nat'l Ass'n*, 175 So. 3d 377, 380 (Fla. 4th DCA 2015).

Last, the bank argues the PSA shows it has been the owner of the loan since June 1, 2007, because the mortgage loan schedule shows the note was transferred into the PSA. This also fails because "evidence that the note was physically transferred into a trust prior to [the plaintiff] filing its foreclosure complaint does not, by itself, establish standing." *Jarvis v. Deutsche Bank Nat'l Trust Co.*, 169 So. 3d 194, 196 (Fla. 4th DCA 2015).

The bank simply failed to prove standing because it failed to prove that it possessed *the original note endorsed in its favor* prior to filing the complaint. We therefore reverse the final judgment of foreclosure.

The borrower next argues that in approving the magistrate's recommendation of involuntary dismissal of the TILA counterclaim, the court overlooked competent substantial evidence of violations in the TILA Statement. He argues that on the face of the TILA Statement, the payment schedule and APR were grossly misstated. Thus, he was entitled to a recoupment of damages that exceeded the default amount and barred foreclosure.

Without belaboring this point, we agree the TILA violation can be considered in defense of any future foreclosure action. Although the borrower was not entitled to a separate action for damages because the statute of limitations expired, he could be entitled to an offset and recoupment of damages against the bank's foreclosure judgment. *Kasket v. Chase Manhattan Mortg. Corp.*, 695 So. 2d 431, 434–35 (Fla. 4th DCA 1997).[3]

We reverse the final judgment of foreclosure based on the bank's failure to prove standing, and also reverse the judgment in favor of the bank on

---

[3] In *Beach v. Great Western Bank*, 692 So. 2d 146 (Fla. 1997), our supreme court discussed *Allie v. Ionata*, 503 So. 2d 1237 (Fla. 1987), and noted that "we held that a counterclaim of recoupment of money damages may be asserted even though the underlying claim itself would have been timebarred if raised as a separate cause of action." *Beach*, 692 So. 2d at 150–51 (citing *Allie*, 503 So. 2d at 1239–40).

the TILA violation counterclaim.

*Reversed.*

WARNER, J., and JEFFREY DANA GILLEN, Associate Judge, concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***